*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of RODRICK GORDON.

RODRICK GORDON, a legally protected person,

        Petitioner-Appellant,

v

GUARDIAN & ASSOCIATES, INC.,

        Respondent-Appellee

and

WILBART FAMILY SERVICES, LLC,

        Appellee.

FOR PUBLICATION
May 13, 2021
9:20 a.m.

No. 354646
Wayne Probate Court
LC No. 2018-842965-GA

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Petitioner, Rodrick Gordon, appeals by right the probate court order denying his petition to terminate his guardianship.[1] Because the probate court relied on an incorrect legal framework, we reverse and remand for further proceedings.

## I. BASIC FACTS

Gordon is a deaf and blind man. At the hearing on the petition to terminate the guardianship, he testified through two interpreters that he lost his sight following a medical

---

[1] The written order denying the petition to terminate the guardianship states "petition granted," as opposed to "petition denied." However, based on the entirety of the lower court record, it is apparent that the notation was a clerical error.

operation and that he lost his hearing because of a tumor. Thereafter, he was trained at the Michigan State Commission for the Blind and the Helen Keller National Center for Deaf-Blind Youth and Others. Because of that training, he was able to live independently for over 20 years. Then in 2018, he was mugged near his apartment. As a result of the assault, he was hospitalized and then released to a group home because of the hospital's assessment of the risk of danger associated with him living alone. Eventually, however, Gordon left the group home and returned to living in an apartment. Thereafter, Gordon went multiple days without food before he was found wandering the streets in Detroit. Gordon was taken back to the hospital and it was determined that he could no longer care for himself. A petition to establish a guardianship was filed with the probate court and was granted. Approximately one year later, Gordon filed a petition to terminate the guardianship, arguing that he was lucid and could not progress in a group home. Following a series of hearings on the petition, the probate court denied the petition.

## II. PETITION TO TERMINATE A GUARDIANSHIP

### A. STANDARD OF REVIEW

Gordon argues that the trial court employed the wrong legal framework when it denied his petition to terminate the guardianship. This Court reviews a probate court's dispositional ruling for an abuse of discretion. *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017). "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *Id.* (quotation marks and citation omitted). A court necessarily abuses its discretion when it makes an error of law. *TM v MZ (On Remand)*, 326 Mich App 227, 235-236; 926 NW2d 900 (2018).

### B. ANALYSIS

The Estates and Protected Individuals Codes (EPIC), MCL 700.1101 *et seq*., governs the laws concerning the affairs of protected individuals and legally incapacitated individuals. *In re Estate of Vansach*, 324 Mich App 371, 382; 922 NW2d 136 (2018).[2] "The court may appoint a guardian if the court finds by clear and convincing evidence both that the individual for whom a guardian is sought is an incapacitated individual and that the appointment is necessary as a means of providing continuing care and supervision of the incapacitated individual, with each finding supported separately on the record." MCL 700.5306(1). Thereafter, a ward[3] may petition the court to remove the guardian, appoint a successor guardian, modify the guardianship's terms, or terminate the guardianship. MCL 700.5310(2). "A request for [such an order] may be made by informal letter to the court or judge." MCL 700.5310(2). In this case, Gordon's sister retained a lawyer on his behalf, who filed a formal petition seeking termination of the guardianship.

---

[2] " 'Incapacitated individual' means an individual who is impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, or other cause, not including minority, to the extent of lacking sufficient understanding or capacity to make or communicate informed decisions." MCL 700.1105(a).

[3] " 'Ward' means an individual for whom a guardian is appointed." MCL 700.1108(a).

The probate court denied the petition. When stating its findings on the record, the probate court stated that the issue was governed by MCL 700.5219(1) and that the question to be answered was, "Is it in the best interest of [Gordon] for [the guardianship] to be terminated?" The court repeatedly referenced the best-interest standard, and it ultimately found that there was no evidence indicating that terminating the guardianship was in Gordon's best interest. In doing so, the probate court applied the wrong legal standard. MCL 700.5219(1) governs guardians of minors and provides that "[a] person interested in a ward's welfare or, if 14 years of age or older, the ward may petition for the removal of a guardian on the ground that removal would serve the ward's welfare or for another order that would serve the ward's welfare." Gordon is not a minor. Thus, the petition for termination of his guardianship should have been evaluated under MCL 700.5310.

Again, MCL 700.5310(2), provides that a ward may petition the probate court for an order terminating the guardianship. To safeguard the ward's rights, on a petition to terminate a guardianship, the probate court must follow the same procedures that apply to a petition for the appointment of a guardian. MCL 700.5310(4). In particular, a ward has the right "[t]o require that proof of incapacity and the need for a guardian be proven by clear and convincing evidence, as provided in [MCL 700.5306]." Consequently, when deciding a petition to terminate an adult guardianship, the trial court must find that the ward remains incapacitated and that the appointment remains necessary as a means of providing continuing care and supervision for the ward. Further, support for each finding must be "supported separately on the record." See MCL 700.5306(1). Because the probate court relied upon the wrong legal standard, no such findings were made in this case. Consequently, we reverse the court's order denying the petition to terminate the guardianship and remand for further proceedings. Because the relevant circumstances may have materially changed while this appeal was pending, the court should consider up-to-date information on remand.[4]

---

[4] On appeal, Gordon challenges the admissibility of a letter from Dr. Eric Brooks. In the proceedings before the probate court, Gordon challenged the accuracy of the information included in the letter, noting that certain statements were false and that others were not supported by Dr. Brooks's personal knowledge. He also brought to the probate court's attention that when Gordon met with Dr. Brooks, no interpreter was present. Given that Gordon is deaf and blind, it is clear that his ability to communicate with Dr. Brooks was seriously imperiled by the absence of interpreters. Yet, notwithstanding his challenges to the letter, Gordon's lawyer consented to the court considering it when reaching a decision. By agreeing to the admission of evidence, a party waives a claim of error regarding the admission of the stipulated evidence on appeal. *In re Estate of Horton*, 325 Mich App 325, 334 n 4; 925 NW2d 207 (2018). Thus, we decline to consider Gordon's evidentiary challenge.

Gordon also complains that the probate court required him to produce medical evidence to prove that he was no longer an incapacitated individual and that, in doing so, the court improperly shifted the burden of proof. We note that there is no requirement that a petition to terminate a guardianship be supported by medical testimony. However, the absence of such testimony may prove fatal to a ward's petition for termination of a guardianship. In evaluating a claim, the probate court is not required to find credible a ward's testimony that he or she can live independently and

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

does not need a guardian.  The court is free to instead credit medical evidence presented by respondent that supports a finding of continuing incapacity and an ongoing need for a guardianship.

Moreover, viewed in context, the probate court provided Gordon with an opportunity to undergo an independent medical examination and a psychological evaluation, see MCL 700.5306a(1)(f), to rebut Dr. Brooks's letter that was presented by respondent at the first hearing on the petition.  Providing such opportunities, which Gordon declined to take, does not amount to a shifting of the burden of proof.  Additionally, we noted that the probate court was permitted to order Gordon to submit to an independent medical examination.  When considering a petition to appoint a guardian, "[i]f necessary, the court may order that an individual alleged to be incapacitated be examined by a physician or mental health professional appointed by the court who shall submit a report in writing to the court."  MCL 700.5304(1).  This authority extends to petitions to terminate a guardianship.  See MCL 700.5310(4).